UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TODD LEE LEANY, Trustee of the TODD LEE LEANY IRREVOCABLE TRUST, *et. al.*, | Case No. 2:15-cv-01349-MMD-CWH |
| Plaintiffs, | ORDER<br>(ECF Nos. 89, 90, 91) |
| v. | |
| SAN DIEGO STEEL HOLDINGS GROUP, INC., a California corporation; DAVID PERKINS, individually; ERIC B. BENSON, individually; and DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive, | |
| Defendants. | |
| SAN DIEGO STEEL HOLDINGS GROUP, INC., a California corporation; DAVID PERKINS, individually; ERIC B. BENSON, individually, | |
| Counterclaimants/Third Party Plaintiffs, | |
| v. | |
| TODD LEE LEANY, Trustee of the TODD LEE LEANY IRREVOCABLE TRUST; CENTURY PROPERTIES HENDERSON 18, LLC, a Nevada limited liability company, UINTAH LAND INVESTMENTS, LLC, a Limited Liability Company, DON F. AHERN and DFA, LLC, a Nevada Limited Liability Company, | |
| Counter-defendants and Third Party Defendants. | |

///

## I.   SUMMARY

This action arises from an arm's length transaction for the sale of certain real estate property. Before the Court are two motions for summary judgment ("MSJ"): the first by Defendants San Diego Steel Holdings Group, Inc. ("SDSHG"), David Perkins ("Perkins"), and Eric Benson ("Benson") (collectively, "SDSHG Parties") (ECF No. 89), and the other by Third Party Defendants Don F. Ahern ("Ahern") and DFA, LLC ("DFA") (hereinafter collectively, "Ahern/DFA") (ECF No. 91). Also before the Court is a partial motion for summary judgment ("PMSJ") by Plaintiff Todd Lee Leany ("Leany")—who has improperly joined Century Properties Henderson, 18, LLC ("Century 18") as a plaintiff, and Uintah Land Investments, LLC ("Uintah") (collectively, "Counter-defendants"). (ECF No. 91.) The Court has reviewed these motions, the respective responses (ECF Nos. 96, 97, 98), and replies (ECF Nos. 101, 102, 103).

For the reasons discussed below, the Court grants the SDSHG Parties MSJ (ECF No. 89) on Leany's Amended Complaint (ECF No. 47) in its entirety. Counter-defendants' PMSJ (ECF No. 90) and Ahern/DFA's MSJ (ECF No. 91) are denied in part, and granted in part.

## II.   RELEVANT BACKGROUND[1]

### A.   The Parties

Perkins and Benson are officers or directors of SDSHG. (ECF No. 1 at 11.) Leany is the Trustee of the Todd Lee Irrevocable Trust (ECF No. 59 at 7) and a manager of Century 18 (ECF No. 1 at 11). Leany also owns Uintah. (ECF No. 59 at 7, 10.) Ahern is the President of DFA. (ECF No. 91-1 at 2.)

///

///

///

---

[1]The Court has endeavored to provide a coherent and supportable history of the relevant background despite numerous material inconsistencies in the parties' testimony in the record. However, the Court does not rely on facts that are in dispute in reaching its decision.

## B.    The Henderson Property and Pertinent Agreements

Century 18 owned real property in Henderson, NV, consisting of an 18-acre portion of industrial property ("Industrial Portion"), and an adjacent undeveloped five acres ("Five Acres") (collectively, "Henderson Property").  (ECF No. 41 at 2; ECF No. 91-15 at 25–26.) Pursuant to a settlement agreement, an entity called Gerdau Reinforcing Steel (formerly Pacific Coast Steel, or herein "Gerdau"[2]) acquired a $26 million lien against the Henderson Property, among other properties.[3] (ECF No. 96-1 at 10–11; ECF No. 91-15 at 210–12, 220–221; ECF No. 91-13 at 2; ECF No. 90 at 3–4.) Additionally, upon the sale of the Henderson Property, Gerdau was to receive all equity therein in excess of the amount of a senior bank debt Century 18 owed. (ECF No. 91-13 at 2; ECF No. 91-15 at 25–26, 45–46; ECF No. 41 at 2.) The SDSHG Parties contend that Leany had personally guaranteed the debt ($7.5 million) to the bank—GE Capital. (ECF No. at 96 at 4; ECF No. 96-3 at 4; *see also* ECF No. 91-15 at 45; ECF No. 90-3 at 5.)

As part of the settlement, Gerdau was also to continue leasing the Industrial Portion through March 31, 2015, and was given an option to purchase the entire Henderson Property by paying off the senior debt owed to GE Capital. (ECF No. 91-15 at 25–28; ECF No. 90-3 at 4–5.) Leany testified that "about six months" before the maturity date of a portion of the senior debt, Gerdau *informally* informed Leany that it would not exercise its option to obtain the Henderson Property by paying off the senior debt. (ECF No. 90-3 at 5; *see also* ECF No. 90 at 4.) Leany then began looking for opportunities to sell the Henderson Property to avoid default and foreclosure. (ECF No. 90-3 at 5.)

///

///

---

[2]*See* ECF No. 91-16 at 8 (Perkins Depo. at 24, indicating there were two different Pacific Coast Steel, of which one was Gerdau).

[3]Leany elucidates that "[a]lthough SDSHG was also a party to the [settlement agreement], Gerdau completely bought SDSHG out of the [Pacific Coast Steel] partnership at the same time [the relevant litigation was settled], making Gerdau the sole promisee of the Note and sole secured party." (ECF No. 90 at 3; *cf.* ECF No. 91-15 at 30–31, 40–41 (Perkins testifying); *but see* ECF No. 91-15 at 210–11 (Perkins testifying that SDSHG had "no interest" in the Henderson Property before acquiring Gerdau's interest, and that Leany had only been dealing with Gerdau).)

### C. Leany Found a Buyer & Gerdau Transfers its Option to SDSHG

Through an associate, Leany found a potential buyer to purchase the Henderson Property—Third Party Defendant Ahern. (ECF No. 91-14 at 21–24.) During their first meeting, Leany represented that he owned or controlled the Henderson Property and was looking for a buyer because GE Capital needed to be "paid off." (*Id.* at 27–28.) Leany and Ahern began negotiating the sale price for the Henderson Property. (*Id.* at 28.)

Leany testified as follows about his discussions with Ahern regarding the value of the Henderson Property:

> Q. In any case, you were talking with [Ahern] about—at least in part about the value of the property, and I think you said that you took the appraisal that Gerdau had commissioned in connection with the settlement agreement, at least as a discussion point with him?
>
> [Leany:] Yes
>
> Q. And that appraisal showed a value of, what, about $ 16 million dollars or so?
>
> [Leany:] Yes.
>
> Q. Isn't it true that you, in that meeting, discussed with him the possibility of you getting him a property worth $16 million for about $5 million less if he would work with you? Isn't that what happened?
>
> [Leany:] Well, he knew full well that he was getting a good value for the property.
>
> Q. And you insisted that *he work with you and permit you to personally receive what would otherwise be equity that would have gone to Gerdau?* Isn't that what happened?
>
> [Leany:] Insisted, no.
>
> Q. You did suggest that?
>
> [Leany:] Absolutely.

(ECF No. 89-1 at 213) (emphasis added). Leany ultimately suggested a purchase price of $9.75 million. (ECF No. 91-14 at 8 (Ahern Depo. at 28).) Ahern avers that "[f]rom the beginning" Leany told him that the Five Acres was not part of the $9.75 million acquisition—that it was only included in the transaction to properly clear titles because the bank's lien was on both parcels—and Leany would retain it. (ECF No. 91 at 3, 7; 91-14 at

11–13 (Ahern Depo. at 41–42, 48).) Ahern agreed to the $9.75 million purchase price, which was later reduced to $9.7 million. (ECF No. 91-14 at 10–11 (Ahern Depo. at 35–36, 38–40); *see also* ECF No. 91-16 at 8 (Perkins Depo. at 22).)

In November or December 2014, Leany and Ahern entered into a "non-binding" letter of understanding ("LOU") in furtherance of Ahern's potential purchase of the property. (ECF No. 91-3; ECF No. 91-14 at 16–17 (Ahern Depo. at 58, 62–63); ECF No. 91-15 at 211.) The LOU documents an understanding consistent with Ahern's statements. (*See* ECF No. 91-3 at 2–3.) Particularly, the LOU provides:

> Buyer [Ahern/DFA] acknowledges that the adjacent parcel to the west of the acquired property [,178-14-602-006,] known as APN 178-14-602-005 is currently encumbered under the same GE Capital notes as the acquired property but *is not part of the property being acquired by Buyer*.

> Immediately following the close of escrow for APN 178-14-602-005 [sic] will be transferred to an LLC yet to be formed by Todd Leany for the express purpose of owning APN 178-14-602-005.[4]

(ECF No. 91-3.) At the time Ahern and Leany entered the LOU, SDSHG had no interest in the Henderson Property, and Leany understood Gerdau to be "the lien-right holder" of the Henderson Property. (ECF No. 91-15 at 210–12.) As of January 2015, Gerdau "had expressed, at most, lukewarm interest in retaining an equity interest or equity position in the Henderson [P]roperty." (ECF No. 91-15 at 211.)

On March 9, 2015, Perkins on behalf of SDSHG informed Leany that SDSHG was attempting to acquire Gerdau's interest in the Henderson Property. (ECF No. 91-15 at 211–12.) Perkins testified that Leany mentioned, during a call from Perkins, that "Gerdau had waived [its] rights to the [Henderson Property,]" but Perkins represented such waiver had not occurred. (*Id.* at 213–14, 217.) Perkins testified that at some point during the conversation, Leany disclosed that he had brokered a deal to sell the Henderson Property to Ahern or Ahern's company Xtreme Manufacturing—replaced in the PSA by DFA, whereby Leany would also

///

---

[4]The yet to be formed company refers to Uintah.

receive the Five Acres as his compensation for putting the deal together. (ECF No. 96-1 at 14.) Leany did not disclose the specific details of the LOU to Perkins. Perkins additionally testified that he told Leany "in no uncertain terms" that such a deal regarding the Five Acres would not be honored. (*Id.*) In any event, Perkins had called Leany to let him know not to proceed with the sale of the Henderson Property to Ahern/DFA because SDSHG was acquiring Gerdau's rights and SDSHG intended to purchase the Henderson Property. (ECF No. 91-15 at 217; *see also* ECF No. 96-1 at 14.)

Later in March 2015, Gerdau assigned its interest in the Henderson Property to SDSHG. (91-13 at 2; 91-15 at 221–23.) While SDSHG had intended to hold the Henderson Property for an indefinite period, in early April 2015 Perkins, on behalf of SDSHG, contacted Leany to "revive the Ahern deal." (ECF No. 91-16 at 8 (Perkins Depo. at 21–22).) This was after local brokers represented to SDSHG that the Henderson Property was worth less than the 15 to 16 million it thought the property was worth and was "more like 10 million, 11 million, $12 million in value." (*Id.*) In April or May 2015, Leany ultimately reported to SDSHG that Ahern would only pay $9.7 million for the Henderson Property. (*Id.* at 8–9 (*see* Perkins Depo. at 23 & 25).) It is uncontested that at no point after the deal was "revive[d]" did the SDSHG Parties speak with Ahern/DFA or otherwise relay to Ahern/DFA that Leany was not to receive the Five Acres.

## A. Closing on the Henderson Property

During closing on the Henderson Property, an "Agreement of Purchase and Sale and Joint Escrow Instructions" ("PSA"—effective as of March 31, 2015, but signed on April 7, 2015—was provided to the title company. (ECF No. 91-4; ECF No. 91-13 at 3.) The PSA created confusion for the title agent leading the agent to send an email to DFA representative Rick Cooley ("Cooley") the same day (ECF No. 91-13 at 3). The April 7, 2015 email states:

Hi Rick,

> We are reviewing the purchase agreement and I am a bit confused. The first page of the purchase agreement show [SDSHG] as seller, however the exhibits (including the sample of the deed) show the seller as [Century 18] (which is the current owner per county assessor). Please advise.

(*Id.*; *see also* ECF No. 91-4.) Cooley directed the title agent's inquiry to Leany, copying the title agent to his email and asking Leany to explain (ECF No. 91-13 at 3). It appears that in response to the inquiry Leany for the first time explains SDSHG's role:

> Hi Jennifer,
>
> Good question, long answer.
>
> [Century 18] is the owner. The property was pledged in a settlement agreement with Gerdau back in 2011 to conclude a lawsuit between Gerdau/Pacific Coast Steel and Century Steel. Hence, the equity in the property was expected to go to Gerdau/Pacific Coast Steel when it sold. Since then, Gerdau had another legal disagreement with [SDSHG]. Gerdau/Pacific Coast Steel assigned their interest in the property to SDSHG *only 3 weeks ago* to conclude the lawsuit. After that assignment took place SDSHG reached out to me because they were interested in keeping the deal moving forward. I figured I would have to get into the weeds *and explain SDSHG at some point* but didn't want to confuse everyone until it looked like it was definitely moving forward.

*Id.* at 2 (emphasis added).

Cooley subsequently directed the title agent to "prepare an amendment to the [PSA]" to, *inter alia*, add Century 18 to the purchase agreement as "an additional seller with Todd Leany to sign," and to delete the Five Acres from the agreement because DFA was only acquiring the Industrial Portion. (ECF No. 91-6 at 2.) The PSA was amended. (*See* ECF No. 91-5 (First Amendment to Agreement of Purchase and Sale and Joint Escrow Instructions ("First Amendment")).)

The First Amendment modified the PSA to, among other things, list Century 18 as the seller of the Henderson Property—substituted in place of SDSHG—and direct the receipt of "all proceeds realized from sale of the property (specifically, the Purchase Price minus the sums required to satisfy the [senior bank debt] estimated to total $7,434,586.84)" to SDSHG. (*Id.* at 6.) The First Amendment did not change the purchase price—interlineated in the PSA at $9.7 million, nor that

the property for purchase included both the Industrial Portion and the Five Acres (*compare* ECF No. 91-5 *with* ECF No. 91-4). As to the latter, Ahern/DFA aver— without citation to supporting record—that after Cooke had informed the title agent to remove the Five Acres from the sales agreement, Leany "contacted DFA and informed them that a different mechanism was to be used. [Leany] reiterated that it was problematic to separate the two parcels in the sale." (ECF No. 91 at 9.)

The sale closed on June 3, 2015. (ECF No. 91-10.) It is uncontested that for the sale of the entire Henderson Property, SDSHG received the difference of the paid $9.7 million (*id.*) and the senior bank debt as the proceeds from the sale. However, after the sale of the entire Henderson Property to Ahern/DFA, and after Leany had commenced the instant lawsuit against the SDSHG Parties, Ahern/DFA purchased the option to buy the Five Acres from Leany for $1.6 million. (ECF No. 91-12 at 5; ECF No. 91-14 at 13–14 (Ahern Depo. at 48–51); ECF No. 1 at 10.) As noted, Ahern/DFA otherwise would have turned over the Five Acres to Leany (*see, e.g.*, ECF No. 91-12; ECF No. 91-14 at 13–14 (Ahern Depo. at 48, 51); ECF No. 96-2 at 10, 39–40.)

**B.    The Parties' Disputes**

Leany filed suit in Clark County District Court against the SDSHG Parties approximately two weeks after the sale of the Henderson Property because the SDSHG Parties did not pay him for his work on the sale as they had agreed. (ECF No. 1 at 10; ECF No. 41 at 2.) Leany asserted claims against the SDSHG Parties for breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, intentional interference with contractual relations, and declaratory relief. (ECF No. 41 at 2.) The SDSHG Parties removed based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 (*Id.*) This Court dismissed Leany's lawsuit without prejudice, but granted leave for him to amend his original complaint. (*Id.* at 4–6.) The permitted amendment was limited to the inclusion of "claims related to an underlying partnership agreement" and to make specific

allegations to support an acceptable claim for unjust enrichment. (*Id.* at 6.) The SDSHG Parties now seek summary judgment on Leany's Amended Complaint. (ECF No. 89; ECF No. 47 (Amended Complaint).)

The SDSHG Parties separately assert counterclaims against Leany and his related companies Uintah and Century 18, based on the subsequent $1.6 million payment for the Five Acres and/or agreement for the Five Acres to be reconveyed to Leany. (ECF No. 59.) The SDSHG Parties seek relief for breach of fiduciary duty, breach of contract, fraudulent misrepresentation, fraudulent omission, fraudulent concealment, civil conspiracy, and consumer fraud. (*Id.*) All, except the breach of fiduciary duty claim, are also asserted against Ahern/DFA, with a different claim for aiding and abetting breach of fiduciary duty additionally asserted against them. (*Id.*)

Leany, Uintah and Century 18 seek summary judgment on all of the SDSHG Parties' claims against them, except the SDSHG Parties' claim for breach of fiduciary duty. (ECF No. 90 at 2.) Ahern/DFA seek summary judgment on all claims the SDSHG Parties assert against them. (ECF No. 91.)

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250–51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the

parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV.    THE SDSHG PARTIES' MOTION FOR SUMMARY JUDGMENT (ECF NO. 89)

As noted, the SDSHG Parties seek grant summary judgment in their favor on Leany's claims asserted in his Amended Complaint. The Court agrees that summary judgment is so warranted.

### A.    Preliminary Matters

Fed. R. Civ. P. 15(a) provides that a party may amend their complaint once "as a matter of course" before a responsive pleading is served, after that the "party may amend the party's pleading only by leave of court or by written consent of the adverse party."

In amending his original complaint Leany has also taken liberty to add Century 18 as a plaintiff to his lawsuit. The addition of Century 18 is impermissibly beyond the scope

///

10

of the Court's grant of leave to amend. Accordingly, the Court strikes Century 18 from Leany's Amended Complaint.

Leany has also reasserted his contract-based claims—that the Court previously dismissed, and again for which the Court did not permit amendment—under a new theory. Contrary to his earlier contention[5], Leany now inconsistently argues that SDSHG promised to pay the fee not as a commission, but instead for "cooperation" in providing services to facilitate the closing of the sale of the Henderson Property. (ECF No. 97 at 18.) In this regard, Leany avers both that "Plaintiffs"—he *and* Century 18—were owed 25% of the profits from the net proceeds of the sale (ECF No. 47 at 6), and other times states only that Century 18 was owed the same (ECF No. 97 at 18).

Besides the contract-based claims being beyond the bounds of the Court's permitted amendment, The SDSHG Parties have demonstrated that the "law of the case" doctrine bars Leany from recovering the payment. (*See* ECF No. 89 at 4, 9.)

The "law of the case" doctrine precludes a court from "reconsidering an issue that has already been decided by the same court . . . in the identical case." *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). However, the Court has "discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *Id.* (citation omitted).

Here, Leany appears to concede that the law of the case is a bar to recovery of the payment, but requests that the Court depart therefrom based on a finding of the third and fourth discretionary bases. (ECF No. 97 at 17.) The Court declines to reconsider the

///

---

[5]Leany previously argued that the SDSHG Parties breached an agreement to pay him a real estate commission constituting twenty-five percent (25%) of the profits from the sale of the Henderson Property. (ECF No. 41 at 4.) This Court found that because Leany was not a licensed real estate broker he is barred from bringing any claim seeking compensation for providing services falling under Nevada real estate brokerage regulations, NRS § 645 *et seq.* (*Id.* at 4–5.)

payment issue as a contractual matter, as pertaining to Leany individually. First, the third basis, which concerns "evidence on remand," is inapplicable. Second, Leany's apparent argument that there is a change in circumstance because Century 18 was added as a party (*id.*) is unavailing. The Court's ruling striking Century 18 from this action nullifies this argument. Furthermore, Leany cannot rely on a change circumstance that is of his own making.

Leany is therefore bound by the Court's implicit finding that the payment was to be a "commission" and its expressed finding that Leany "cannot recover such a commission" to the extent he alleges only activity related to the sale of the Henderson Property, and "because he is not a licensed real estate broker." (ECF No. 41 at 4–5.)[6] Moreover, the effect of the Court's refusal to reconsider the contractual matter means that Leany's second, fourth, fifth, and sixth claims again fail because they also constitute actions based on the agreement for the invalid payment of a commission. (*See* ECF No. 47; *see also* ECF No. 41 at 5 (similarly dismissing these additional claims based on the dismissal of the breach of contract claim); ECF No. 97 at 27 (Leany conceding that his fourth claim depends on the validity of the contract claims).)

## B.    Leany's Partnership Claims (Claims 7 and 8)

In arguing against summary judgment on his ability to recover the payment, Leany now asserts partnership by estoppel and breach of partnership claims, as permitted by the Court's grant of leave to amend. (ECF 47 at 9–10; ECF No. 41 at 6.) The Court finds that Leany's partnership claims are either baseless or barred by the law of the case.

In claim seven, Leany asserts that, pursuant to NRS § 87.160(1), emails Perkins sent to him created a partnership between him and the SDSHG Parties and that he is therefore entitled to 25% split of the profits from the Henderson Property sale. (ECF No. 47 at 9–10.) The Court finds the assertion is legally baseless.

///

///

_____

[6]As to Century 18, there is no indication that Century 18 was a real estate brokerage firm—a necessary status for a permissible recovery of a commission.

To support this claim Leany references emails in "Exhibit 'A'" without citing to any particular page of the 102 page document constituting Exhibit A. (*See* ECF No. 47 at 10; ECF No. 98-1.) The emails the Court ultimately found most clearly evidences a conflict brewing between Perkins (representing SDSHG) and Leany. (*See* ECF No. 98-1 at 56, 71–73.) Most importantly, the SDSHG Parties have established that Leany's reliance on NRS § 87.160(1) is misguided. The Court finds in line with the SDSHG Parties' argument that NRS § 87.160(1) creates a partnership by estoppel where a third party relies on representation regarding the existence of a partnership. (*See* ECF No. 89 at 13.) Leany provides no authority to support his apparent position that he[7]—a non-third party—can avail himself of NRS § 87.160(1) to create a partnership by estoppel. Accordingly, the Court finds claim seven is meritless.

Leany's eighth claim for a breach of partnership premised on the formation of a partnership under NRS § 87.4322 (ECF No. 47 at 13) is likewise unconvincing. Again, Leany references the "Exhibit 'A'" emails as evidencing the creation of a partnership and additionally asserts that the SDSHG Parties' conduct supports the existence of said partnership. (*Id.*) The Court cannot agree.

In addition to stating what *does not* form a partnership, NRS § 87.4322 provides:

> A person who receives a share of the profits of a business is presumed to be a partner in the business *unless* the profits were received in payment: (1) Of a debt by installments or otherwise; (2) For services as an independent contractor or of wages or other compensation to an employee . . . .

*Id.* (emphasis added).

The SDSHG Parties refute the existence of a partnership, indicating that payment was for independent contracting services. (ECF No. 89 at 13.) Leany argues that he was not an independent contractor because "the alleged contract for services" was not in fact for services, but instead an agreement to obtain cooperation. (ECF No. 97 at 27.) Leany's argument is again undermined by the law of the case—that the agreement between Leany

///

---

[7]This claim is asserted by "Plaintiffs." The Court finds that its conclusion as to claim seven would also bars a finding of partnership by estoppel for Century 18.

and the SDSHG Parties was for the payment of *commission for services* rendered as a real estate broker. "Exhibit 'A'" does not otherwise support Leany's eighth claim for a breach of partnership. Accordingly, the Court finds Leany cannot establish this claim.

The Court thus grants the SDSHG Parties' summary judgment on Leany's partnership claims.

### C. Leany's Unjust Enrichment Claim

The Court previously dismissed Leany's unjust enrichment claim for failure to state a cognizable claim, but granted him leave to amend to allege services he purported he had provided the SDSHG Parties that did not fall under the real estate brokerage regulations. (ECF No. 41 at 5–6.) Leany presently argues that even if the Court grants summary judgment on his contractual claims he (1) should be allowed to recover the payment to prevent the SDSHG Parties' unjust enrichment, and (2) is not prevented from recovering payment for non-broker services. (ECF No. 97 at 19–26.)

The Court finds that Leany's first argument merely attempts to reassert an unjust enrichment claim that contravenes the Court's limited amendment allowance, and is barred by NRS § 645.270 given the Court's ruling that the payment was intended as a commission. (*See* ECF No. 41.) As to Leany's second argument, the Court finds Leany failed to supplement his Amended Complaint as instructed—to allege facts that would culminate in damages beyond the barred commission. (*See* ECF No. 47.) Accordingly, the Court grants summary judgment in the SDSHG Parties' favor on Leany's unjust enrichment claim.

///

///

///

///

///

///

///

## V. COUNTER-DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SDSHG PARTIES' COUNTERCLAIMS (ECF NO. 90)[8]

The SDSHG Parties assert counterclaims against Leany—individually, Century 18, and Uintah[9] (collectively, "Counter-defendants"). (ECF No. 59.) The Counter-defendants seek partial summary judgment on the SDSHG Parties' third through eighth counterclaims (*see id.*) for relief. (ECF No. 90.) All, except the third claim—breach of contract, and seventh claim—civil conspiracy, are based in fraud (hereinafter, "Fraud Claims").

The Court will strike the SDSHG Parties' fifth claim for fraudulent omission from the SDSHG Parties' counterclaims because the Court finds, as the SDSHG Parties arguably concede—that claim five is duplicative of claim six—fraudulent concealment. (*See* ECF No. 96 at 21:10–13 (admission).) The Court additionally declines to grant summary judgment to Counter-defendants on all the SDSHG Parties' other counterclaims, with the exception of a grant of summary judgment, as a matter of law, on part of the eighth counterclaim for consumer fraud.

### A. Counterclaims Based in Fraud

#### 1. Fraudulent Misrepresentation and Fraudulent Concealment

The Court finds the SDSHG Parties have raised a genuine dispute regarding their fraudulent misrepresentation and fraudulent concealment claims ("Non-statutory Fraud Claims") as asserted against Counter-defendants.

While the Court will only substantively address the arguments underlying Counter-defendants' summary judgment request, the Court finds it useful to highlight the elements

///

---

[8]To the extent Counter-defendant's motion for partial summary judgment appears to make arguments on behalf of Ahern/DFA, the Court does not consider them. Counter-defendants do not purport to represent Ahern/DFA in this lawsuit and, as noted, Ahern/DFA has filed their own motion for summary judgment (ECF No. 91) seeking dismissal of all claims against them. The Court separately addresses Ahern/DFA's motion *infra*.

[9]While the SDSHG Parties lists Uintah as a third party defendant (ECF No. 59 at 2), the Court finds Uintah, which is Leany's company is most appropriately a counter-defendant with Leany. Thus, Ahern and DFA are the only third party defendants.

the SDHSG Parties necessarily must establish, by clear and convincing evidence, to prevail on the Non-statutory Fraud Claims. *See Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1155 (9th Cir. 2005) (citing *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992)).

To succeed on their fraudulent misrepresentation claims, under Nevada law, the SDSHG Parties must establish: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the [re]presentation; (3) defendant intended to induce plaintiff to act or refrain from acting in reliance upon the misrepresentation; and (4) damage to the plaintiff as a result of justifiably relying on the misrepresentation. *See, e.g.*, *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (1998) (citing *Bulbman, Inc.*, 825 P.2d at 592); *Tennier v. Wells Fargo Bank, N.A.*, No. 3:14-cv-0035-LRH-VPC, 2015 WL 128672, at *3 (D. Nev. Jan. 8, 2015), *aff'd*, 666 F. App'x 686 (9th Cir. 2016).

To establish fraudulent concealment, a plaintiff must prove five elements: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; and (5) the plaintiff sustained damages as a result of the concealment or suppression. *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995).

Here, Counter-defendants seek summary judgment on these claims, essentially arguing that the SDSHG Parties have no evidence of any actual misrepresentations and their fraudulent misrepresentation and concealment claims fail because they were informed of the arrangement that Leany had with Ahern concerning the Five Acres, and ultimately agreed to the sale. (ECF No. 90 at 13–15.) The Court finds these arguments unconvincing.

First, the SDHSG Parties have shown that Counter-defendants failed to disclose the specific "non-binding" 2014 LOU signed by Ahern/DFA memorializing the agreement

to re-covey the Five Acres to Leany after the sale of the Henderson Property. (ECF No. 96 at 5; ECF No. 96-4 at 23–24; ECF No. 91-3; ECF No. 91-14 at 16–17.). This evidence puts into question the sufficiency of Leany's 2015 disclosure that he had struck a deal with Ahern/DFA to receive the Five Acres from Ahern/DFA as compensation for facilitating the Henderson Property sale. (ECF No. 96-1 at 14.) To be sure, the LOU provided concrete details that could have bolstered the SDHSG Parties' understanding of the worth Ahern/DFA attached solely to the Industrial Portion of the Henderson Property and creates a dispute as to Leany's representation to SDHSG during negotiations that Ahern/DFA was only willing to pay 9.7 million for the *entire* Henderson Property (*compare* ECF No. 96-4 at 23–24 *with* ECF No. 96-6 at 5–6.). (*See also* ECF No. 91 at 7 & n.13 (noting that Leany told Ahern that the $9.75 million purchase price, which was reduced to $9.7 million was only for the developed portion of the Henderson Property).) Moreover, the Court disagrees with Counter-defendants that the specific details surrounding the transfer by Ahern/DFA of the Five Acres to Leany or Uintah are immaterial (ECF No. 101 at 11–12.)

Second, the SDSHG Parties provide Perkins' testimony that upon hearing about Leany's Five Acre deal with Ahern (absent mention of the LOU), Perkins told Leany "in no uncertain terms" that such arrangement would not be "honor[ed]" as part of the sale of the Henderson Property. (ECF No. 96-1 at 14.) Presumably, that bar applied after SDSHG obtained Gerdau's interest in the Henderson Property. To the extent Perkins' testimony is deemed credible, it, at minimum, creates a factual dispute as to whether Perkins' objection extended to the later "revived" deal for Leany to proceed with the sale of the Henderson Property to Ahern/DFA. The Court finds that a reasonable jury could resolve this issue in the SDSHG Parties' favor as against Counter-defendants.

Third, there is a dispute whether Leany had a duty to disclose to the SDSHG Parties the September 14, 2015 "termination agreement" whereby Ahern/DFA agreed to pay Uintah $1.6 million to cancel the agreement which was intended for the sale of the Five Acres by DFA to Leany/Uintah for $1.00. (ECF No. 96-2 at 15–16.) The SDSHG Parties argue that Leany had such a duty based on the existence of a special relationship. (ECF

No. 96 at 22–23.) *See, e.g.*, *Tai-Si Kim v. Kearney*, 838 F. Supp. 2d 1077, 1100 (D. Nev. 2012) (citation omitted) ("A real estate agent/vendor buyer relationship is one such relationship triggering a duty to disclose where the agent has superior knowledge."). A jury should determine the issue of the existence of a duty-bound relationship between Leany and the SDSHG Parties because the evidence indicates that at certain relevant times Leany was acting on behalf of the SDSHG Parties.

Counter-defendants additionally argue that the SDHSG Parties could not have reasonably relied on any alleged misrepresentation because they "had sufficient information [,based on being informed of Leany's deal with Ahern/DFA before Perkins informing Leany such a deal would be not honored,] to be on notice that further inquiries may be necessary [after the deal to sell the Henderson Property to Ahern/DFA was revived]." (ECF No. 90 at 14.) The Court finds that the question of whether the SDHSG Parties justifiably relied on Counter-defendants' representations or omissions is a question of fact for a jury to decide and thus is not a proper basis for a grant of summary judgment. *See, e.g.*, *Epperson v. Roloff*, 719 P.2d 799, 803 (Nev. 1986) (ruling that the question of what a plaintiff could or should have discovered by independent investigation was a question for the jury to decide).

The Court therefore denies Counter-defendants' PMSJ on the SDSHG Parties' Non-statutory Fraud Claims.

///

///

///

///

///

///

///

///

///

18

## 2.    Consumer Fraud Pursuant to NRS § 598.0900 and NRS § 119.330 (2)(a)

The SDSHG Parties additionally assert a statutory claim for consumer fraud against Counter-defendants pursuant to NRS § 598.0900, *et seq.* and NRS § 119.330 (2)(a). (ECF No. 59.)

As an initial matter, the Court finds NRS § 598.0900, *et seq.* does not apply to real estate transactions—the only transaction involved in this matter.[10] *See Kawahara v. Kennedy*, No. 3:14-cv-00012-MMD-WGC, 2015 WL 789744, at *5–6 (D. Nev. Feb. 25, 2015) (noting "[c]ourts in the District of Nevada . . . have concluded that the deceptive trade practices defined in NRS Chapter 598—the statutory basis for Plaintiff's consumer fraud claim here—do not apply to real estate transactions," but finding the relevant transaction factually distinguishable because "the Complaint concerns alleged fraud carried out by a borrower's attorney in preparing loan documents"). Because the SDSHG Parties' counterclaims do not clearly allege actions against an individual(s) or entity(ies) separate and apart from the real estate transaction (ECF No. 59 at 18), the Court grants summary judgment on the consumer fraud claim to the extent it is brought pursuant to NRS § 598.0900, *et seq.*

However, the Court will deny Counter-defendants' request for summary judgment on the consumer fraud claim, as brought under NRS § 119.330(2)(a). A person commits a consumer fraud violation under NRS § 119.330(2)(a) if said person "[s]ells or attempts to sell in this state any subdivision or any lot, parcel, unit or interest in any subdivision by

///

---

[10]While Counter-defendants do not make this argument, Ahern/DFA (the alleged "Third Party Defendants") do. (ECF No. 91 at 29–30; ECF No. 103 at 18–20.) *See, e.g.*, *Frow v. De La Vega*, 82 U.S. 552 (1872) (holding that where multiple defendants are jointly liable, it would be "incongruous" for judgment to be entered against a defaulting defendant before a decision on the merits as to the remaining defendants); *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532–33 (9th Cir. 2001) (reversing, based on *Frow*, inconsistent rulings on the applicability of the same statute in the same civil action); *see also Silverton v. Dep't of the Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (A court "may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

1    means of intentional misrepresentation, deceit or fraud." In seeking summary judgment on

2    this ground, Counter-defendants proffer materially the same argument as for the Non-

3    statutory Fraud Claims—that the claim fails because the SDSHG Parties were informed

4    of the arrangement that Leany had with Ahern/DFA concerning the Five Acres, Leany

5    never represented that he had terminated the agreement with Ahern, and SDHSG

6    ultimately agreed to the sale. (ECF No. 90 at 15.)

7         For the various disputed issues the Court noted above in addressing the Non-

8    statutory Fraud Claims, Counter-defendants' argument is unavailing as to fraud and

9    misrepresentation at this juncture. Additionally, it is up to a jury to decide whether the

10   SDSHG Parties should have reasonably expected that Leany would terminate the

11   agreement for the Five Acres with Ahern after Perkins allegedly informed him that such

12   an agreement would not be honored prior to the "revive[d]" sale to Ahern/DFA. Therefore,

13   Counter-defendants are not entitled to summary judgment on the SDSHG Parties'

14   consumer fraud claim as alleged under NRS § 119.330(2)(a).

15        **B.      The SDSHG Parties' Breach of Contract and Civil Conspiracy Claims**

16        Counter-defendants next seek summary judgment on the SDSHG Parties' breach

17   of contract[11] and civil conspiracy claims. (ECF No. 90 at 12.) The Court declines to grant

18   summary judgment.

19   ///

---

20   [11]The Court will not address the SDSHG Parties' unpleaded breach of contractual
     duty of good faith and fair dealing claim. The Court disagrees with the SDSHG Parties'
21   unsupported position, first explicated in a footnote in their response to Ahern/DFA's MSJ,
     discussed *infra*, that "[t]here is no requirement under Nevada law that a plaintiff is required
22   to duplicate efforts and plead both a breach of contract and also a separate breach of the
     contractual duty of good faith and fair dealing cause of action. (ECF No. 98 n.7.) *See Hilton*
23   *v. Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 925 & n.5 (Nev. 1991) (indicating
     that a breach of the implied good faith and fair dealing covenant must be specifically
24   pleaded, unless the parties choose to litigate it by their consent). Here, Counter-
     defendants first had the opportunity to address the issue in their reply brief (ECF No. 101
25   at 10) because the SDSHG Parties first asserted the claim in their response to Counter-
     defendants' MFPSJ (ECF No. 96 at 18), and Ahern/DFA "has not expressly or implicitly
26   consented to try" the issue (ECF No. 103 at 4 n.3).

27        The SDSHG Parties similarly failed to plead a cause of action for reformation of the
     PSA (or First Amendment thereto), and assert the issue for the first time in their responsive
28   briefing (ECF No. 96 at 19; ECF No. 98 at 17). The Court will likewise not consider it. *See*

### 3. Breach of Contract Claim

The SDSHG Parties argue Counter-defendant Century 18 breached the PSA (and the First Amendment thereto) by failing to provide all the proceeds of the sale of the Henderson Property to SDSHG. (ECF No. 59 at 13–14.) To prevail on this claim, the SDHSG Parties must prove: (1) the existence of a valid contract between the parties; (2) plaintiff performed or was excused from performance under the contract; (3) a material breach by the defendant; and (4) plaintiff sustained damage as a result of the breach. *Walker v. State Farm Mut. Auto. Ins. Co.*, 259 F. Supp. 3d 1139, 1145 (D. Nev. 2017) (quotation and citations omitted).

In their PMSJ Counter-defendants argue that the SDHSG Parties cannot demonstrate that Century 18 breached the written PSA (and the First Amendment thereto) because SDSHG received all of the net proceeds from the sale of the Henderson Property and was aware of the agreement between DFA and Uintah regarding the transfer of the Five Acres. (ECF No. 90 at 12.) Based on the Court's prior determinations, the Court finds that there is a genuine dispute regarding whether SDHSG in fact received all net proceeds and/or whether Leany adequately informed the SDHSG Parties about the Five Acres agreement between Leany/Uintah and DFA/Ahern. In particular, there is at minimum a genuine dispute as to whether the $1.6 million Ahern/DFA ultimately paid Leany for the Five Acres should be considered part of the net proceeds of the sale of the Henderson Property, as the sale was understood by the various parties. As noted, based on Leany's representations and omissions, Ahern/DFA contend they understood the purchase price

///

---

*Grappo v. Mauch*, 887 P.2d 740, 742 (1994) (indicating the issue of reformation must be pleaded, or tried by express or implied consent, and there must be necessary facts in the complaint to sustain the claim). It is not clear to the Court that the counterclaims supports a claim for reformation, the parties have not "tried" the issue, and again Ahern/DFA has expressly refused to consent to trying the issue (ECF No. 103 at 4 n.3).

The Court will not consider the issue for the additional reason that the SDSHG Parties did not timely seek leave to amend their counterclaim, and discovery has closed in this matter after various discovery extensions (*see* ECF No. 85 ("Discovery due by 7/27/2017.")).

1    to affect only the Industrial Portion of the Henderson Property, with Leany maintaining
2    ownership of the Five Acres which was included in the sale to Ahern/DFA to properly clear
3    titles. On the other hand, the SDSHG Parties believed that the proceeds covered both the
4    Industrial Portion and the Five Acres, without Leany retaining the latter.

5    Accordingly, the Court denies Counter-defendants' request for summary judgment
6    on the asserted breach of contract claim.

### 4.    Civil Conspiracy Claim

8    The SDSHG Parties allege civil conspiracy between Counter-defendants and
9    Ahern/DFA. (ECF No. 59 at 17–18.)

10    To establish Counter-defendants' liability for civil conspiracy, SDSHG must
11    demonstrate Counter-defendants, "by some concerted action, intend[ed] to accomplish
12    some unlawful objective for the purpose of harming another which results in damage."
13    *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir. 1999) (citing
14    *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999)). "A defendant's
15    knowledge of and participation in a conspiracy may be inferred from circumstantial
16    evidence and from evidence of the defendant's actions." *Gilbrook*, 177 F.3d at 856–57
17    (citation omitted).

18    Counter-defendants argue that the conspiracy claim fails because "[t]here is no
19    evidence in this case that Leany sought an unlawful objective with Ahern for the purpose
20    of harming SDSHG." (ECF No. 90 at 16.) Counter-defendants contend their argument is
21    buttressed by Leany having disclosed the arrangement with Ahern/DFA to the SDSHG
22    Parties and that once the Henderson Property was sold to Ahern/DFA, Ahern/DFA could
23    have disposed of it to their liking. (*Id.*)

24    The Court finds that, in light of all the evidence, the civil conspiracy claim must be
25    resolved by a jury after being presented with the evidence, and making determinations
26    regarding credibility. *Mendocino Envtl. Ctr.*, 192 F.3d at 1301–02 (internal quotations and
27    citations omitted) ("Whether defendants were involved in an unlawful conspiracy is
28    generally a factual issue and should be resolved by the jury, so long as there is a possibility

1    that the jury can infer from the circumstances (that the alleged conspirators) had a
2    'meeting of the minds' and thus reached a understanding to achieve the conspiracy's
3    objectives."). For this claim, the Court particularly considers Leany's testimony, noted
4    *supra* at 4, regarding a purported understanding he had with Ahern/DFA—before SDSHG
5    acquired Gerdau's interest in the Henderson Property. Leany's testimony could be
6    understood as an agreement for Ahern/DFA to "work with" Leany to obtain the Henderson
7    Property below its value. The Court leaves it to a jury to decide the probative value of
8    Leany's testimony relative to the other evidence in the record. Accordingly, the Court will
9    deny Counter-defendants' request for summary judgment on the SDSHG Parties' civil
10   conspiracy claim.

11   **VI.    THIRD PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO.**
12   **91)**

13   Ahern/DFA seek dismissal from this litigation and of all claims for relief that the
14   SDSHG Parties allege against them. (ECF No. 91 at 4; *see also* ECF No. 59.) Based on
15   the foregoing, the Court will deny Ahern/DFA's request for summary judgment on the
16   SDSHG Parties' breach of contract[12] and civil conspiracy claims. The Court will otherwise
17   discuss Ahern/DFA's motion as to the SDSHG Parties' remaining claims against them.

18   **A.    Consumer Fraud**

19   The Court finds that Ahern/DFA are entitled to summary judgment on the SDSHG
20   Parties' consumer fraud claim (ECF No. 59 at 18) as a matter of law.  First, the Court has
21   already found *supra*, consistent with Ahern/DFA's argument (ECF No. 91 at 29–30; ECF
22   No. 103 at 18–20), that the SDSHG Parties are not entitled to relief under NRS § 598.0900,
23   *et seq.* Second, Ahern/DFA have established that there is no legally viable claim against
24   them pursuant to NRS § 119.330(2)(a) because Ahern/DFA are the purchasers of the
25   Henderson Property—not the sellers (*see* ECF No. 103 at 20). *See* NRS § 119.330(2)(a)
26   ///

_____

27   [12]The Court's prior analysis is equally applicable to Ahern/DFA's argument because
     Ahern/DFA essentially maintain the conflict regarding what should constitute the net
28   proceeds of the sale in light of the parties' understanding. (*See* ECF No. 91 at 16–17; ECF
     No. 103 at 3.)

(providing that the statute is violate where a person "[s]ells or attempts to sell in this state any subdivision or any lot, parcel, unit or interest in any subdivision by means of intentional misrepresentation, deceit or fraud"). To the extent the Five Acres may be deemed at issue in this regard, the Court finds that it is undisputed that Ahern/DFA did not in fact *sell* back the Five Acres to Leany.

### B. Aiding and Abetting Breach of Fiduciary Duty

The Court also grants Ahern/DFA summary judgment on the SDSHG Parties' claim for aiding and abetting breach of fiduciary duty (ECF No. 59 at 13). In their responsive brief (ECF No. 98), the SDSHG Parties admit that their underlying breach of fiduciary claim is premised on Leany's allegation of "some kind of partnership with [the SDSHG Parties] related to the Henderson Property (*id.* at 21). The Court has herein concluded that Leany cannot prevail on his partnership claims. Therefore, because the SDSHG Parties' breach of fiduciary duty claim depends on the existence of a partnership that this Court has concluded does not exist, the Court grants summary judgment for Ahern/DFA on the claim for aiding and abetting said breach of fiduciary duty.

### C. Fraudulent Misrepresentation and Fraudulent Concealment

Ahern/DFA attack the SDSHG Parties' remaining Non-statutory Fraud Claims jointly and individually. (ECF No. 91 at 21.)

First, Ahern/DFA argue that these claims jointly fail because the SDSHG Parties cannot provide any evidence (i.e., document, witness, etc.) that Ahern/DFA attempted to keep any information secret *or* were even aware that Leany was no longer to receive the Five Acres. (ECF No. 91 at 18–21.) The Court finds that the same basis for its conspiracy ruling—Leany's testimony regarding an alleged undisclosed understanding with Ahern as to acquiring the Henderson Property for less than its value—bars a grant of summary judgment.

Second, Ahern/DFA provide arguments separately tailored to the misrepresentation and concealment claims that the Court now examine in turn.

///

24

### 1. Separate Consideration of the SDSHG Parties' Fraudulent Misrepresentation Claim

Ahern/DFA contend that the SDSHG Parties' fraudulent misrepresentation claim fails because: (1) they could not be liable for intentional misrepresentation because there was "absolutely no communication" between Ahern and SDSHG (ECF 91 at 24); and (2) there is no dispute that Ahern/DFA only intended to pay $9.7 million (as reduced) for the Henderson Property and did not intend to buy the Five Acres at the time (*id.* at 25).

To be clear, the SDSHG Parties' fraudulent misrepresentation claim is not premised on any direct communications with Ahern/DFA. The SDSHG Parties argue that Ahern/DFA misrepresented the actual purchase price of the Henderson Property in the PSA (and First Amendment thereto), and related closing documents. (ECF No. 59 at 15; ECF No. 91 at 19.) Moreover, the evidence suggests that Ahern/DFA—albeit allegedly at Leany's direction[13]—signed the closing documents to also receive the Five Acres for $9.7 million, even though they thought the Industrial Portion alone was worth as much. Leany's testimony suggesting a plan for Ahern/DFA to "work with" him to obtain the entire Henderson Property below its actual value, *see supra* at 4, again forecloses a grant of summary judgment for Ahern/DFA. As noted, the question of whether the SDSHG Parties justifiably relied on the specified representations is for a jury. *See, e.g.*, *Epperson*, 719 P.2d at 803. A jury could also reasonably decide that Leany hoodwinked both Ahern/DFA and the SDSHG Parties.

///
///
///
///
///
///
///

---

[13]*See supra* at Section II (C).

## 2. Separate Consideration of the SDSHG Parties' Fraudulent Concealment Claim

Ahern/DFA next argue specially that the SDSHG Parties' fraudulent concealment claim against them cannot be sustain. (ECF No. 91 at 25.) The Court agrees.

The Court finds that the SDSHG Parties fail to establish a necessary element of their claim[14]—that Ahern/DFA was under a duty to disclose certain information to them. *See supra* at 16 (providing all the elements of this claim). Specifically, the Court is unpersuaded that Ahern/DFA had a duty to disclosed "the actual purchase price of the Henderson Property to SDSHG" (ECF No. 59 at 17, ¶ 81) or "the material facts of what [Ahern/DFA] were actually doing with Leany." (ECF No. 98 at 19).

"With respect to fraudulent concealment, a duty to disclose arises from the relationship of the parties." *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 110 (Nev. 1998). Beyond a fiduciary relationship—which the SDSHG Parties do not purport to have with Ahern/DFA—a duty to disclose may arise "where the parties enjoy a 'special relationship,' that is, where a party reasonably imparts special confidence in the defendant and the defendant would reasonably know of this confidence." *Id.* (citations omitted); *see also Perry v. Jordan,* 900 P.2d 335, 337–38 (Nev. 1995) (finding that a "confidential relationship" "exists when one party gains the confidence of the other and purports to act or advise with the other's interests in mind"). "A party's superior knowledge thus imposes a duty to speak in certain transactions, *depending on the parties' relationship.*" *Dow Chem. Co.*, 970 P.2d. at 110 (emphasis added).

As they did regarding Leany, the SDSHG Parties argue that there is a "special relationship" between SDSHG and Ahern/DFA. (ECF No. 98 at 19–20.) However, there is no evidence of any such relationship; and the only case the SDSHG Parties cite indicating a type of "special relationship" is inapposite as to their relationship with Ahern/DFA (*see*

///

---

[14]"Where an essential element of a claim for relief is absent, the facts, disputed or otherwise, as to other elements are rendered immaterial and summary judgment is proper." *Barmettler*, 956 P.2d at 1386 (citation omitted).

ECF No. 98 at 19). *See Tai-Si Kim*, 838 F. Supp. 2d at 1100 ("A real estate agent/vendor buyer relationship is one such relationship triggering a duty to disclose where the agent has superior knowledge.").

The SDSHG Parties improperly rely on *Mackintoch v. Jack Mathews and Co.*, 855 P.2d 549 (Nev. 1993), to support their argument that "the existence of a special relationship is a question of fact to be determined at trial." (ECF No. 98 at 20.) *Mackintosh* does not support such a broad pronouncement. As the SDSHG Parties indicate, *Mackintosh* did not answer the question of whether there is generally a special relationship between a buyer and a seller (ECF No. 98 at 20). *See* 855 P.2d at 553–54. Nor did *Mackintosh* say that it is always or ordinarily within the jury's purview to consider whether a special relationship exists between parties. In *Mackintosh*, the Nevada Supreme Court's decision was tailored to the particular facts of the case—the plaintiffs purchased property "as is" using a home loan from a defendant that was both the lender and the seller. *Id.* at 554. The court focused on the defendant's hybrid identity, and concluded:

> A jury may find that a special relationship existed if the jury determines that [the defendant's] status as the lender *as well as the seller* would have caused a reasonable person to place more confidence and reliance on [the defendant] than would be placed on an ordinary seller.

*Id.* at 554 (emphasis added). Reliance on *Mackintosh* is unfitting to this case because unlike the defendant there, Ahern/DFA are the purchasers of the Henderson Property and are not also lenders.

The SDSHG Parties' additional argument—in apparent reliance on *Dow Chem. Co.*—that "[e]ven when the parties are dealing at arm's length, a duty to disclose may arise from the existence of material facts peculiarly within the knowledge of the party sought charged[]" is misleading. *See Dow Chem. Co.,* 970 P.2d. at 110. To be exact, *Dow Chem Co.* provides: "Even when the parties are dealing at arm's length, a duty to disclose may arise from the existence of material facts peculiarly within the knowledge of the party sought charged *and* not within the fair and reasonable reach of the other party." *Id.* (Emphasis added.)

The Court does not understand how the knowledge of the purchase price could be "peculiarly" within Ahern/DFA's knowledge—where Leany who was brokering the purchase of the Henderson Property on SDSHG's behalf—had access to the same information Ahern/DFA did. The SDSHG Parties do not argue that Ahern/DFA were responsible for ensuring that Leany shared information exchanged between Leany and Ahern/DFA with them. Neither can the Court independently conclude that a jury could infer that Ahern/DFA may be responsible for the SDSHG Parties' alleged reasonable reliance "on Leany as [they] proceeded to the closing of the transaction," (ECF No. 98 at 20), especially where Ahern/DFA never had any direct line of communication with them, and they admittedly could have communicated with Ahern/DFA (ECF No. 91-15 at 100–101).

Moreover, the SDSHG Parties fail to even argue that "the actual purchase price of the Henderson Property" was not within their "fair and reasonable reach." Therefore, the Court has no basis from which to infer the likelihood of such a conclusion. Accordingly, the Court concludes that there is no genuine dispute of a basis providing a special relationship or peculiarity of knowledge creating a duty for Ahern/DFA to have directly disclosed information to the SDSHG Parties.

For these stated reasons, the Court grants Ahern/DFA summary judgment on the SDSHG Parties' fraudulent concealment claim.

## VII.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Century 18 is stricken from Plaintiffs' Amended Complaint (ECF No. 47).

It is further ordered that the SDSHG Parties' motion for summary judgment (ECF No. 89) is granted as to Plaintiffs' Amended Complaint in its entirety.

///

It is further ordered that the SDSHG Parties' fifth claim for fraudulent omission is stricken and their unpleaded breach of contractual duty of good faith and fair dealing claim (*see* ECF Nos. 96, 98) and request for reformation (ECF No. 96 at 19; ECF No. 98 at 17) will not be considered.

It is further ordered that the Counter-defendants' motion for partial summary judgment (ECF No. 90) is denied in part, and granted in part. The Court grants summary judgment on part of the SDSHG Parties' eighth claim for consumer fraud to the extent that claim is brought pursuant to NRS § 598.0900 *et seq.* Counter-defendants' motion for partial summary judgment is otherwise denied.

It is further ordered that Third Party Defendants' motion for summary judgment on the SDSHG Parties' counterclaims (ECF No. 91) is granted in part, and denied in part. It is granted on counterclaims asserted against Third Party Defendants, except the breach of contract, fraudulent misrepresentation and civil conspiracy claims (respectively, third, fourth, and seventh claims).

The Clerk of the Court will enter judgment accordingly.

DATED THIS 29th day of August 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE